UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DENELLE MARIE HEDRICK, | No. 2:22–cv–2029–KJN |
| Plaintiff, | ORDER |
| v. | (ECF No. 16, 18.) |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

Plaintiff seeks judicial review of a final decision by the Commissioner of Social Security denying her application for Disability Insurance Benefits.[1]  In her summary judgment motion, plaintiff contends the Administrative Law Judge ("ALJ") erred in excluding fibromyalgia as an impairment and assign limitations; considering obesity; and assessing her mental health impairments.  Plaintiff seeks a remand for further proceedings.  The Commissioner opposes, filed a cross-motion for summary judgment, and seeks affirmance.

For the reasons below, plaintiff's motion is DENIED; the Commissioner's cross-motion is GRANTED, and the final decision of the ALJ decision is AFFIRMED.

///

///

---

[1] This action was referred to the magistrate judge under Local Rule 302(c)(15) and reassigned the undersigned on the consent of all parties.  (ECF Nos. 6, 9, 10.)

1

I. **RELEVANT LAW**

The Social Security Act provides for benefits for qualifying individuals unable to "engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment." 42 U.S.C. § 423(d)(1)(a). An Administrative Law Judge ("ALJ") is to follow a five-step sequence when evaluating an applicant's eligibility, summarized as follows:

> **Step one**: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
> **Step two**: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
> **Step three**: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
> **Step four**: Is the claimant capable of performing past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
> **Step five**: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995); see also 20 C.F.R. § 404.1520(a)(4). The burden of proof rests with the claimant through step four, and with the Commissioner at step five. Ford v. Saul, 950 F.3d 1141, 1148 (9th Cir. 2020).

A district court may reverse the agency's decision only if the ALJ's decision "contains legal error or is not supported by substantial evidence." Id. at 1154. Substantial evidence is more than a mere scintilla, but less than a preponderance, i.e., "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. The court reviews the record as a whole, including evidence that both supports and detracts from the ALJ's conclusion. Luther v. Berryhill, 891 F.3d 872, 875 (9th Cir. 2018). However, the court may review only the reasons provided by the ALJ in the decision and may not affirm on a ground upon which the ALJ did not rely. Id. "[T]he ALJ must provide sufficient reasoning that allows [the court] to perform [a] review." Lambert v. Saul, 980 F.3d 1266, 1277 (9th Cir. 2020).

The ALJ "is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Ford, 950 F.3d at 1154. Where evidence is susceptible to more than one rational interpretation, the ALJ's conclusion "must be upheld." Id. Further, the court may not reverse the ALJ's decision on account of harmless error. Id.

1  **II.    BACKGROUND AND ALJ'S FIVE–STEP ANALYSIS**

In July of 2020, plaintiff applied for Disability Insurance Benefits, alleging an onset date of April 21, 2020. (Administrative Transcript ("AT") 359-60.) Plaintiff claimed disability due to "fibromyalgia, persistent suppressive disorder, [and] anxiety." (See AT 221.) Plaintiff's application was denied initially and upon reconsideration, and she sought review with an ALJ. (See AT 232; 255; 274.) Plaintiff appeared alongside a representative at an August 2021 remote hearing, where she testified about her conditions and where a vocational expert testified about available jobs for those with similar limitations. (AT 186-220.)

On August 23, 2021, the ALJ issued a decision determining plaintiff was not disabled. (AT 130-43.) At step one, the ALJ concluded plaintiff had not engaged in substantial gainful activity since April 21, 2021. (AT 132.) At step two, the ALJ determined plaintiff had the following severe impairments: lumbar disc desiccation, obstructive sleep apnea, mood disorder, depression, and anxiety. (Id.) Relevant here, the ALJ found insufficient evidence to establish fibromyalgia as a medically determinable impairment, despite noting that Dr. Clarke diagnosed fibromyalgia in September of 2014 (with 14 of 18 positive points bilaterally, upper, and lower extremities). (AT 133, citing AT 928.) At step three, the ALJ determined plaintiff's impairments did not meet or medically equal the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Id.) Regarding plaintiff's physical limitations, the ALJ stated that obesity is not a listed impairment, but that the combined effects of plaintiff's obesity were considered. (Id.) Regarding plaintiff's mental limitations, the ALJ considered Listings 12.04 (depression) and 12.06 (anxiety). The ALJ found plaintiff was moderately limited in the Paragraph B categories of interacting with others, as well as in concentrating, persisting, and maintaining pace; plaintiff was also found to have mild limitations in adapting or managing oneself, and no limitations in understanding, remembering, and applying information. (AT 134.) Thus, the ALJ found plaintiff was not disabled under paragraph B (nor under paragraph C)  (Id.)

The ALJ then found plaintiff had the residual functional capacity ("RFC") to perform medium work as per 20 C.F.R. § 404.1567(c), except that plaintiff could:

///

> [L]ift/carry/push/pull 25 pounds occasionally and 25 pounds frequently; stand/walk 4 hours in an 8-hour workday; sit 6 hours in an 8-hour workday; occasionally climb ramps and stairs; never climb ladders, ropes or scaffolds; and occasionally balance, stoop, kneel, crouch and crawl[;] cannot work with even moderate exposure to unprotected heights, heavy moving machinery, and other hazards.
> [P]erform simple and semiskilled tasks up to an SVP 4; and [] have occasional public contact.

(AT 134.) In crafting this RFC, the ALJ stated he considered plaintiff's symptom testimony, the objective medical evidence, and the prior administrative medical findings ("PAMFs"). (AT 134-35.) The decision summarizes plaintiff's symptom testimony from her disability reports and from the August 2021 hearing (AT 135-37), the medical evidence in the record stretching from September of 2016 through February of 2021 (AT 137-39), some of plaintiff's daily activities in her personal and work life (AT 139), three medical opinions expressed in the 2020 PAMFs (AT 140), and statements made by plaintiff's mother and sister (AT 140-41.) The ALJ found each of the PAMFs to be "persuasive" as consistent with the medical evidence, medical opinions, and plaintiff's daily activities. (AT 140.)

Based on the RFC, the ALJ determined plaintiff was capable of performing past relevant work as an office helper, as actually and generally performed (light and unskilled, SVP 2); thus, the ALJ found plaintiff was not disabled. (AT 141.) The ALJ also found plaintiff capable of performing other jobs in the national economy, including: (i) sorter, agricultural produce (light and unskilled, SVP 2, with 120,000 jobs in the national economy); (ii) routing clerk (light and unskilled, SVP 2, with 70,000 jobs in the national economy); and (iii) garment sorter (light and unskilled, SVP 2, with 45,000 jobs in the national economy). (AT 142.)

The Appeals Council rejected plaintiff's appeal and did not consider newer medical records submitted by plaintiff relating to the period after the ALJ's decision. (AT 1-4; see also AT 8-126 and 148-85.) Plaintiff then filed this action requesting judicial review of the Commissioner's final decision; the parties filed cross-motions for summary judgment. (ECF Nos. 1, 16, 18, 22.)

///

///

### III. ISSUES PRESENTED

Plaintiff contends the ALJ erred by: (A) excluding fibromyalgia as a medically determinable impairment at step two and failing to assign corresponding physical limitations in the RFC; (B) failing to consider her severe obesity in the RFC; and (C) improperly assessing her mental health symptoms. Plaintiff seeks a remand for further proceedings. (ECF No. 16, 22.)

The Commissioner argues the ALJ: (A) committed no reversible error regarding the fibromyalgia finding given the lack of medical evidence; (B) properly considered plaintiff's obesity in crafting the RFC; and (C) properly considered the medical evidence and symptom testimony regarding plaintiff's mental limitations. Thus, the Commissioner contends the decision as a whole is supported by substantial evidence and should be affirmed. (ECF No. 18.)

### IV. DISCUSSION

**Legal Standards – Step Two Severe and Non-severe Impairments**

Under the Commissioner's regulations, an impairment or combination of impairments is deemed to be severe at step two if it "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). An impairment or combination of impairments can be found not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996) (internal citations and quotation marks omitted). The step two assessment is a "de minimus screening to dispose of groundless claims." Edlund v. Massanari, 253 F.3d 1152, 1158 (9th Cir. 2001). A failure to properly resolve an impairment at step two may be harmless if the ALJ considers the functional limitations caused by that impairment later in the decision. Lewis v. Astrue, 498 F.3d 909, 911 (9th Cir. 2007).

**Legal Standards – Subjective Symptom Testimony**

A claimant's statements of subjective symptoms alone are insufficient grounds to establish disability. 20 C.F.R § 404.1529(a). If an ALJ was required to believe every allegation of pain or impairment, disability benefits would run afoul of the Social Security Act and its purpose. See Treichler v. Comm'r, 775 F.3d 1090, 1106 (9th Cir. 2014). In evaluating the extent to which an ALJ must credit the claimant's report of their symptoms, the Ninth Circuit has stated:

> First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. In this analysis, the claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom. Nor must a claimant produce objective medical evidence of the pain or fatigue itself, or the severity thereof.
>
> If the claimant satisfies the first step of this analysis, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so. This is not an easy requirement to meet: The clear and convincing standard is the most demanding required in Social Security cases.

Revels v. Berryhill, 874 F.3d 648, 655 (9th Cir. 2017) (quoting Garrison, 759 F.3d at 1014-15).

The ALJ's reasons for discounting or rejecting a claimant's subjective symptom testimony must be "sufficiently specific to allow a reviewing court to conclude the adjudicator . . . did not arbitrarily discredit a claimant's testimony." Brown-Hunter v. Colvin, 806 F.3d 487, 483 (9th Cir. 2015) (quoting Bunnell v. Sullivan, 947 F.2d 341, 345-46 (9th Cir. 1991)).  Examples of "specific, clear and convincing reasons" for discounting or rejecting a claimant's subjective symptom testimony include:  prescription of conservative treatment, inconsistencies between a claimant's testimony, and conduct (including daily activities), and whether the alleged symptoms are consistent with the medical evidence of record.  See Tommasetti v. Astrue, 533 F.3d 1035, 1040 (9th Cir. 2008); Lingenfelter v. Astrue, 504 F.3d 1028, 1040 (9th Cir. 2007); see also Fair v. Bowen, 885 F.2d 597, 604 n.5 (9th Cir. 1989) (explaining that the ALJ may employ ordinary techniques of credibility evaluation and may take into account prior inconsistent statements).  A lack of corroborating, objective medical evidence alone is insufficient grounds for an ALJ to discount a claimant's subjective symptoms; however, it is a factor the ALJ may consider.  See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001) (citing 20 C.F.R § 404.1529(c)(2)).

**Legal Standards – Medical Opinions and Persuasiveness under the 2017 Regulations**

For applications filed on or after March 27, 2017, an ALJ need "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or [PAMF], including those from [plaintiff's] medical sources." See 20 C.F.R. §§ 404.1520c(a) and 416.920c(a).  Instead, an ALJ is to evaluate medical opinions and PAMFs by considering their "persuasiveness."  Id.  In determining how "persuasive" the opinions of medical sources and

1  PAMFs are, an ALJ must consider the following factors: "supportability, consistency, treatment
2  relationship, specialization, and "other factors." Id. at sub. (b) and (c)(1)-(5).
3        Despite a requirement to "consider" all factors, the ALJ's duty to articulate a rationale for
4  each factor varies. Id. at sub. (a)-(b). The ALJ must explain how the supportability and
5  consistency factors were considered, as they are "the most important factors." Id. at sub. (b)(2).
6  Supportability is "the extent to which a medical source supports the medical opinion by
7  explaining relevant objective medical evidence." Woods v. Kijakazi, 32 F.4th 785, 791-92 (9th
8  Cir. 2022). Consistency is "the extent to which a medical opinion is consistent with the evidence
9  from other medical sources and nonmedical sources in the claim." Id. at 792. The regulations
10 grant the ALJ flexibility to weigh the supportability and consistency factors based on all evidence
11 in the record. 20 C.F.R. §§ 404.1520c(c)(1)-(2) and 416.920c(c)(1)-(2). The ALJ is not required
12 to articulate findings on the remaining factors (relationship with plaintiff, specialization, and
13 "other") unless "two or more medical opinions or prior administrative medical findings about the
14 same issue" are "not exactly the same," and both are "equally well-supported [and] consistent
15 with the record." Id. at sub. (b)(2)-(3).
16       An ALJ may address multiple opinions from a single medical source in one analysis. 20
17 C.F.R. §§ 404.920c(b)(1) and 416.920c(b)(1) ("source-level articulation"). "[I]n interpreting the
18 evidence and developing the record, the ALJ does not need to discuss every piece of evidence."
19 Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003)).
20       **Legal Standards – RFC Formulation**
21       A claimant's residual functional capacity assessment is a determination of what the
22 claimant can still do despite his or her physical, mental and other limitations. See 20 C.F.R.
23 § 404.1545(a). The RFC is the "maximum degree to which the individual retains the capacity for
24 sustained performance of the physical-mental requirements of jobs." 20 C.F.R. Part 404, Subpt.
25 P, App. 2, § 200.00(c). In determining a claimant's RFC, an ALJ must assess all the evidence
26 (including the descriptions of limitation, and medical reports) to determine what capacity the
27 claimant has for work despite the impairment(s). See 20 C.F.R. § 404.1545(a).
28 ///

**Analysis**

**A. Fibromyalgia Analysis**

"Fibromyalgia is 'a rheumatic disease that causes inflammation of the fibrous connective tissue components of muscles, tendons, ligaments, and other tissue.'" Revels v. Berryhill, 874 F.3d 648, 656 (9th Cir. 2017) (quoting Benecke v. Barnhart, 379 F.3d 587, 589 (9th Cir. 2004)). As described by the Ninth Circuit:

> Typical symptoms include chronic pain throughout the body, multiple tender points, fatigue, stiffness, and a pattern of sleep disturbance that can exacerbate the cycle of pain and fatigue. What is unusual about the disease is that those suffering from it have muscle strength, sensory functions, and reflexes that are normal. Their joints appear normal, and further musculoskeletal examination indicates no objective joint swelling. Indeed, there is an absence of symptoms that a lay person may ordinarily associate with joint and muscle pain. The condition is diagnosed entirely on the basis of the patients reports of pain and other symptoms. There are no laboratory tests to confirm the diagnosis.

Id. (cleaned up). In any disability determination involving fibromyalgia, "the medical evidence must be construed in light of fibromyalgia's unique symptoms and diagnostic methods, as described in SSR 12-2p and Benecke. The failure to do so is error[.]" Revels, 874 F.3d at 662.

SSR 12-2p reminds that fibromyalgia symptoms "wax and wane," and a person may have "bad days and good days." Soc. Sec. Ruling, SSR 12-2p: Evaluation of Fibromyalgia, (July 25, 2012), available at 2012 WL 3104869). SSR 12-2p first requires the ALJ to determine whether a claimant has fibromyalgia as a medically determinable impairment by utilizing one of two frameworks set forth by the American College of Rheumatology. SSR 12-2p at *4 (requiring a showing that the claimant: (1) has widespread pain that has lasted at least three months, although the pain may "fluctuate in intensity and may not always be present"; (2) either has tenderness in at least eleven of eighteen specified points, or has repeated manifestations of six or more fibromyalgia symptoms, signs, or co-occurring conditions (such as fatigue, cognitive or memory problems i.e. "fibro fog", waking unrefreshed, depression, anxiety disorder, or irritable bowel syndrome); and (3) other disorders are ruled out). "[A]fter a claimant has established a diagnosis of fibromyalgia, an analysis of [the RFC] should consider 'a longitudinal record whenever possible.'" Revels, 874 F.3d at 657 (quoting SSR 12-2p).

Here, the ALJ determined plaintiff's fibromyalgia was non-severe, reasoning at step two that there was "insufficient evidence to establish [a] medically determinable impairment" just because Dr. Clarke diagnosed plaintiff with fibromyalgia on September 15, 2014 (14 of 18 positive points bilaterally, upper and lower extremities). (AT 133, citing 928.) The Commissioner argues this finding was proper because the regulations generally require more than just symptom allegations, a diagnosis, or medical opinion for fibromyalgia to be established as a medically determinable impairment. See 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 404.1529(a); Ukolov v. Barnhart, 420 F.3d 1002, 1005 (9th Cir. 2005). SSR 12-2p affirms this general principle specifically for fibromyalgia. See SSR 12-p at par. I ("Generally, a person can establish that he or she has an MDI of FM by providing evidence from an acceptable medical source. A licensed physician (a medical or osteopathic doctor) is the only acceptable medical source who can provide such evidence. We cannot rely upon the physician's diagnosis alone.").

However, the Commissioner's argument ignores the rest of the guidance in the policy interpretation—as well as other portions of the medical record. Paragraph 1 of SSR 12-2p states that the evidence "must document that the physician reviewed the claimant's medical history and conducted a physical exam"; it also states the treatment notes should display a consistency with the diagnosis, including whether the "symptoms have improved, worsened, or remained stable over time" and whether the physician assessed the claimant's "physical strength and functional abilities" over time. SSR 12-2p at *4. Here, the record containing Dr. Clarke's 2014 diagnosis states plaintiff's medical history was reviewed and a physical exam was performed. (See AT 927-28 (listing past medical history and active problem list, and detailing results of a physical exam).) Further, the rest of the record demonstrates, at minimum, some consistency with Dr. Clarke's 2014 diagnosis.[2] (See, e.g., AT 540-42 (2019 records demonstrating confirmation of fibromyalgia diagnosis and prescription of pain medications); 491 (July 2020 records, same); 649-50 and 657 (October 2020 records, same, and noting history from 2016 showing similar prescriptions); 687 (November 2020 records, same). Thus, the ALJ erred in finding there was

---

[2] A review of the record also implicitly indicates plaintiff's physicians ruled out other conditions, given the persistent fibromyalgia diagnosis and pain management—despite no explicit finding.

9

insufficient evidence to show plaintiff had the MDI of fibromyalgia at step two (AT 133). Edlund, 253 F.3d at 1158 (reminding that step two is a "de minimus" screening).

SSR 12-2p states that once fibromyalgia is found to be an MDI, the ALJ is to incorporate this into the five-step framework. SSR 12-2p at VI; see also Lester, 81 F.3d at 828 n.5 (describing the five-step sequence) . Given that the ALJ discussed the effects of plaintiff's "cycle of pain and fatigue" across the "longitudinal record" (Revels, 874 F.3d at 656 and 657) in the RFC section, the salient question here is whether the ALJ's error at step two is harmless. Lewis, 498 F.3d at 911; see also Molina v. Astrue, 674 F.3d 1104, 1115 (9th Cir. 2012) ("[A]n error is harmless so long as there remains substantial evidence supporting the ALJ's decision and the error does not negate the validity of the ALJ's ultimate conclusion." (citation omitted, superseded on other grounds by 20 C.F.R. § 404.1502(a)); Revels, 874 F.3d at 662 ("In evaluating whether a claimant's residual functional capacity renders them disabled because of fibromyalgia, the medical evidence must be construed in light of fibromyalgia's unique symptoms and diagnostic methods . . . ."). After reviewing the record and ALJ's decision, the undersigned finds the error was harmless.

Here, in the RFC section, the ALJ noted plaintiff's assertions in her disability reports that she was unable to work because of her fibromyalgia. (AT 135, citing AT 387, 396.)  This included plaintiff's statements that:  (i) she was fired from work due to her medical conditions, absenteeism, and a mental breakdown (AT 457; 403); (ii) she took medications such as Abilify, Gabapentin, Nortryptyline, and Zoloft throughout the relevant period (389; 471-72; 819); (iii) she occasionally drew blanks and became forgetful and would zone out (AT 396); (iv) her depression and fibromyalgia trigger each other (AT 396); (v) and swelling and pain in her legs, ankles, feet, and joints made it difficult to perform daily chores or get out of bed (AT 403).  The ALJ noted similar statements plaintiff made at the hearing and to medical professionals in 2020-21.  (See AT 192-206 and 215-20; 778, 893.)  Plaintiff stated that because of her fibromyalgia and other conditions, she could stand for no more than 30-45 minutes, walk no more than 15 minutes when exercising or 60 minutes when shopping, sit for no more than about an hour, and had to lay down when her pain was bad (approx. 12 days a month).  (AT 205, 215.)

The ALJ rejected plaintiff's testimony at the hearing and in the function reports primarily due to her activities of daily living. (AT 139.) This determination includes the ALJ's finding that plaintiff (i) could care for her mother and brother, including driving them to appointments or shopping for them; (ii) passed the agility test when applying to work as a bus driver in 2021; and (iii) worked as a full-service shopper for three days in the week prior to the hearing, which involved plaintiff's sister driving and shopping with plaintiff one of those days, and which resulted in increased pain and fatigue afterwards. (Id. (citing AT 192-94; 202-03; 904).) The ALJ also noted the results of plaintiff's physical exams demonstrating full strength and normal gait. (AT 540, 544, 824.) Finally relevant to this inquiry is the ALJ's findings of "persuasive" on the opinions expressed by medical professionals in the PAMFs. (AT 140, citing AT 228-29 and 245-47 (assigning lift/carry/push/pull limits of 25 pounds occasionally and frequently; standing/walking limits of 4 hours and siting for 6 hours in a work day; and occasional climbing ramps and stairs, and balancing, stooping, kneeling, crouching, and crawling).)

These rationales are sufficient to support the ALJ's RFC determination. First, the ALJ is allowed to consider the medical evidence, including medical opinions, when resolving whether a plaintiff's subjective statement testimony alleges limitations greater than what were assigned in the RFC—so long as this is not the only rationale for rejecting symptom testimony. Rollins, 261 F.3d at 857. Thus, the ALJ properly relied on the opinions expressed in the PAMFs when determining plaintiff could (as she contended) stand for more than 30-45 minutes, walk for more than 15 minutes vigorously/60 minutes regularly, and sit for more than an hour. Simply, neither of the PAMFs expressed any such limitations, and the record contains no other medical opinions on this topic. See, e.g., Cathy E.L. v. Kijakazi, 2021 WL 6068647, at *8 (C.D. Cal. Nov. 17, 2021) (noting that although plaintiff was diagnosed with fibromyalgia, "no doctor assigned any specific functional limitations from it, much less any greater than those the ALJ found"); Hurn v. Berryhill, 2018 WL 4026357, at *11 (W.D. Wash. Aug. 23, 2018) ("Most importantly, unlike in Revels, the record here contains no opinion evidence indicating that fibromyalgia had limiting effects beyond those in the RFC."), aff'd sub nom. 798 F. App'x 976 (9th Cir. 2019).

Further, the ALJ can rely on a plaintiff's daily activities so long as they are related to the

limitations being considered (so as to be "clear and convincing"). Morgan v. Comm'r, 169 F.3d 595 (9th Cir. 1999). Here, plaintiff's ability to drive her mother and brother to appointments and shop for them over the period, as well as her ability to pass the driver's test to be a bus driver rationally relates to the ALJ's findings on sitting, standing, and walking, as well as the lift/carry/push/pull, climbing, and postural limits. See id. at 600 (ALJ's determination regarding claimant's ability to "fix meals, do laundry, work in the yard, and occasionally care for his friend's child" was a specific finding sufficient to discredit the claimant's credibility). The undersigned also infers that the decision rejects plaintiff's expressed limitations given the ALJ's citation to plaintiff's long history of working in the six years after her 2014 diagnosis—over which time she received slight adjustments to her medication regimen. Warre v. Comm'r, 439 F.3d 1001, 1006 (9th Cir. 2006). While some of the evidence in the record indicates a close call, these determinations were within the ALJ's discretion and are not to be second guessed by the court upon review. Ford, 950 F.3d at 1154 (reminding that it is for the ALJ to determine credibility, resolve conflicts and ambiguities, as well as that where evidence is susceptible to more than one rational interpretation, the ALJ's conclusion "must be upheld.").

Finally, as to plaintiff's argument that the Appeals Council should have considered the post-decision medical records that it rejected as relating to a new disability period (see AT 1-4; see also AT 8-126 and 148-85), the undersigned finds no reversible error. The undersigned agrees that the records from the post-decision period are probative of plaintiff's claim that her fibromyalgia existed for an extended period, such that the ALJ should have found it to be a medically determinable impairment. However, these post-decision records are not needed for plaintiff to succeed in this argument, as the undersigned agreed that the records between 2014-2021 help establish fibromyalgia as a MDI. Despite this fact, the pre-decision evidence also demonstrated the extent of plaintiff's pain and would not have changed the outcome. Mayes v. Massanari, 276 F.3d 453, 462 (9th Cir. 2001). Further, if plaintiff developed carpal tunnel syndrome or additional conditions since the decision's release, this would apply to a new disability period, as noted by the Appeals Council. Therefore, the undersigned finds no error in the Appeals Council's decision to not exhibit the post-decision evidence.

### B. Obesity Analysis

In addition to plaintiff's assignment of error regarding the ALJ's fibromyalgia findings, she contends the decision fails to account for the effects of her severe obesity. Plaintiff notes that while the ALJ appears to consider this impairment as severe (see AT 137, citing 544 and 784), the RFC should have assigned her to at least a sedentary category, if not less-than-sedentary. Plaintiff primarily relies on her symptom testimony for support this argument, but also notes she took medications to manage her back (and other) pain (AT 389, AT 471-72; 819), had pain in her legs, ankles, feet, and joints that make it difficult to perform daily chores or get out of bed (AT 403), and when the pain was bad (approx. 12 days a month), she lays down (AT 215). The ALJ cites this testimony in the decision (AT 135), and also noted plaintiff's statements about her ability to sit, stand, walk for limited periods, both at the hearing and in her reports to medical professionals in 2020-21. (AT 205; 215; 778; 893.) These extreme limitations were rejected (as noted in the fibromyalgia section above) as out of sync with plaintiff's reports of daily activities, the medical evidence and medical opinions in the record, and implicitly the ability of her doctors to manage her impairments with medication. (AT 139-140; citing AT 216; 228-29; 245-47; 540, 544, 824; 904.) The undersigned finds these rationales supportive of the ALJ's rejection of more severe limitations because of obesity for the same reasons. Rollins, 261 F.3d at 857; Morgan, 169 F.3d at 600; Warre, 439 F.3d at 1006; see also Ford, 950 F.3d at 1154 (reminding that it is for the ALJ to determine credibility, resolve conflicts and ambiguities, as well as that where evidence is susceptible to more than one rational interpretation, the ALJ's conclusion "must be upheld.").

Further, to the extent plaintiff argues she should have been assigned a sedentary RFC, the ALJ found plaintiff could perform past relevant work as an insurance clerk and accounting clerk—both of which are listed as sedentary work. (AT 141.) Thus, even a limitation to sedentary work would have no effect on the overall decision. Ford, 950 F.3d at 1154 (no reversal on account of harmless error).

### C. Mental Health Analysis

In addition to the assignment of error on the ALJ's physical-RFC findings, plaintiff challenges the decision's findings on her mental health limitations. The undersigned disagrees.

13

At steps two and three, the ALJ determined plaintiff's depression, anxiety, and mood disorder were severe conditions but did not meet Listings 12.04 or 12.06. (AT 132-33.) The ALJ found plaintiff moderately limited in the Paragraph B categories of interacting with others and concentrating, persisting, and maintaining pace; plaintiff was also found to have mild limitations in adapting or managing herself, and no limitations in understanding, remembering, and applying information. (AT 134.) The ALJ concluded plaintiff could perform simple and semiskilled tasks up to an SVP 4 with occasional public contact. (AT 134.) The ALJ based these findings on the following evidence: (i) some of plaintiff's assertions that her depression and anxiety affected her day-to-day activities (AT 136; generally citing 192-206; 215-216); (ii) her 2017 treatment for suicidal ideation and attempt (AT 138; citing AT 498; 814-25; 909); (iii) her mental health treatment for depression and anxiety in 2020-21 (AT 138-39); and (iv) the opinion of a psychologist expressed in the PAMFs (AT 140, citing AT 248-251).

Plaintiff contends these findings and conclusion are out of step with her testimony about her fibro-fog and inability to maintain concentration, persistence and pace, as well as the severity of her depression and anxiety and its general effect on her mental abilities. Plaintiff also cites to medical records reflecting her "severe" depression and anxiety diagnoses with symptoms of passive suicidal ideation, agitation, and problems with attention over multiple years. (See AT 479-81; 909; 916.) Plaintiff argues this evidence should have resulted in an RFC not allowing for even unskilled work because she could not concentrate and maintain attention, much less complete a normal workday without interruption. In so arguing, it appears plaintiff contends she should have been assigned "marked" limitations in each of the four Paragraph B categories. But the ALJ rejected such severe restrictions for a few reasons.

First, particularly relevant to the ALJ appears to be plaintiff's ability to return to work after some of her more-severe mental health episodes. (See AT 138.) The ALJ noted plaintiff's extensive treatment history, medication management (including, most recently, plaintiff's seeking of group therapy for treatment), and fluctuation of her symptoms' intensity (some of which were noted to be exacerbated by her relationships and financial stressors). (Id.) The undersigned finds no error in the ALJ's reliance on this evidence to support the Paragraph B and RFC finding. See,

e.g., Jeff A. v. Comm'r, 2021 WL 2390190, at *5 (W.D. Wash. June 11, 2021) (discounting more severe allegations where mental impairments treated with group therapy); Wright v. Colvin, 2014 WL 3729142, at *5-6 (E.D. Wash. July 25, 2014) (noting the ALJ properly discounted testimony concerning mental impairments when the record revealed symptoms were the result of "situational stressors and not related to [mental] impairments.").

Also relevant to the ALJ is the opinion of psychologist Dr. Campbell, expressed in the reconsideration PAMF in December of 2020.  (AT 248-51.)  Dr. Campbell found the records demonstrated plaintiff had moderate/mild/no limitations, as adopted by the ALJ.  (Id.)  Dr. Campbell found that the claimant had an RFC for simple and semiskilled tasks (up to SVP 4 only) with limited public contact.  (Id.)  The ALJ found this opinion persuasive as consistent with the record and adopted these findings into the RFC—a decision plaintiff does not challenge here.  (AT 140.)  Plaintiff does not challenge the ALJ's finding on Dr. Campbell's opinion—which constitutes evidence supporting the paragraph B and RFC determinations.  20 C.F.R. § 404.1513(a)(2).  Thus, the undersigned finds no error here.

As to the remainder of plaintiff's arguments about the severity of her depression and anxiety, the court observes that the ALJ did not outright reject these conditions at step two but did in fact find them to be severe conditions.  (AT 132-33.)  The decision demonstrates the ALJ considered the effect of plaintiff's mental health impairments, which is supported by substantial evidence; the undersigned is not permitted to reweigh this evidence.  Ford, 950 F.3d at 1154.

## V. **CONCLUSION AND ORDER**

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 16) is DENIED;
2. The Commissioner's cross-motion (ECF No. 18) is GRANTED;
3. The final decision of the Commissioner is AFFIRMED; and
4. The Clerk of Court is directed to CLOSE this case.

Dated:  January 4, 2024

hedr.2029

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

15